FILED
2018 Jan-24 AM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JENNIFER L. JONES,  ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | Civil Action No. 7:17-cv-586-CLS |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Jennifer L. Jones, commenced this action on April 11, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

The ALJ found that claimant had the severe impairments of bipolar disorder, generalized anxiety disorder, and substance abuse.[1] He also found that, considering all of claimant's impairments, including the substance abuse disorder, claimant retained the residual functional capacity to perform a full range of work at all exertional levels, but that she would be unable to sustain an eight-hour work day or forty-hour work week due to non-exertional impairments of "inattention and decompensation in the workplace."[2] Even so, the ALJ concluded that, if claimant stopped the substance use, she

> would have no exertional limitations and would have the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. She is limited to simple, 1 to 2-step tasks and is limited to work with no production quotas. She should work with a few familiar co-workers and will perform best in a separate workstation with no coordination with others. She should have no more than occasional supervision. She will require normal work breaks during the day and may have 1 absence from work per month.

Tr. 26. With that residual functional capacity, claimant would be unable to perform her past relevant work, but she would be able to perform a significant number of other jobs existing in the national economy.[3] Based upon all of those findings, the ALJ's

---

[1] Tr. 22.
[2] Tr. 23-24.
[3] Tr. 30.

final conclusion was that:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g) and 404.1535). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

Tr. 31.

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated her substance abuse, improperly found that Kay Knowlton, Ph.D., LPC, was not an acceptable medical source, and improperly gave little weight to the opinion of claimant's treating physician. Upon review of the record, the court concludes that claimant's contentions are without merit.

**A.      Substance Abuse**

The Social Security Act provides, in relevant part, that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C) (alteration supplied). The Commissioner's regulations provide the

following framework for evaluating a claimant's disability status in light of that statutory provision:

> (a) General. If we find that you are disabled *and have medical evidence of your drug addiction or alcoholism*, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow *when we have medical evidence of your drug addiction or alcoholism*.
>
>> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>>
>> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>>
>>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>>
>>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535 (emphasis supplied).

Claimant does not contest the ALJ's use of this regulatory framework. Instead,

she asserts that the ALJ failed to rely upon Social Security Ruling 13-2p in evaluating whether there was, in fact, medical evidence of her drug addiction or alcoholism.[4]

Social Security Ruling 13-2p was issued to "explain [the Commissioner's] policies for how we consider whether 'drug addiction and alcoholism' (DAA) is material to our determination of disability . . . ." SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), at *1 (alteration supplied). The term "DAA" is defined as "Substance Use Disorders," or "Substance Dependence or Substance Abuse as defined in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association." *Id.* at *3. "Substance Use Disorders are diagnosed in part by the presence of maladaptive use of alcohol, illegal drugs, prescription medications, and toxic substances (such as inhalants)." *Id.* The substance abuse must be regular and continued: "[a] claimant's *occasional* maladaptive use or a history of *occasional* prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable Substance Use Disorder." *Id.* (alteration and emphasis supplied).

---

[4] To the extent claimant also argues that the ALJ erred by failing to explicitly mention SSR 13-2p in the administrative decision, *see* doc. no. 11 (Claimant's Brief), at 8 ("Amazingly, the Commissioner allowed its decision to leave its dominion without even noting what rule applies in situations of substance use and how said rule is to be followed."), that argument is not persuasive. Even though the ALJ did not explicitly cite SSR 13-2p, his decision was consistent with that ruling. Claimant even acknowledged as much in her brief. *See id.* ("As to applying SSR 13-2p to the case at bar, the Commissioner attempted to apply the rule as it is noted in the six step DAA Evaluation Process but failed to establish the existence of DAA via the Commissioner's standard.").

The Ruling also provides the following detailed guidance about how the existence of DAA should be established:

b. Establishing the existence of DAA.

i. As for any medically determinable impairment, we must have *objective medical evidence* — that is, signs, symptoms, and laboratory findings — *from an acceptable medical source* that supports a finding that a claimant has DAA. This requirement can be satisfied when there are no overt physical signs or laboratory findings with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant. The acceptable medical source may also consider any records or other information (for example, from a third party) he or she has available, but we must still have the source's own clinical or laboratory findings.

ii. *Evidence that shows only that the claimant uses drugs or alcohol does not in itself establish the existence of a medically determinable Substance Use Disorder*. The following are examples of evidence that by itself does not establish DAA:

• *Self-reported drug or alcohol use*.

• An arrest for "driving under the influence".

• A third-party report.

Although these examples may suggest that a claimant has DAA — and may suggest the need to develop medical evidence about DAA — they are not objective medical evidence provided by an acceptable medical source. In addition, even when we have objective medical evidence, we must also have evidence that establishes a maladaptive *pattern* of substance use and the other requirements for diagnosis of a Substance Use Disorder(s) in the

6

>DSM. This evidence must come from an acceptable medical source.

SSR 13-2p, 2013 WL 621536, at *10 (footnote omitted, emphasis supplied).

Claimant asserts that there was no evidence of substance abuse disorder from an acceptable source, but the record simply does not support that argument. It is true that the ALJ considered claimant's self-reports of marijuana use, sometimes on a daily basis, to her treating psychiatrist.[5] Although those self-reports would not be sufficient, standing alone, the record also contains a diagnosis of "cannabis abuse" from Misty D. Ary, M.D., the physician who treated claimant during her hospitalization at Brookwood Medical Center in August of 2015.[6] Because there is objective medical evidence from an acceptable source that supports a finding of cannabis abuse, the ALJ did not err in his application of SSR 13-2p.

**B.  Kay Knowlton**

An individual who signs her name on professional documents as "Kay Knowlton, PhD, LPC," provided an assessment of claimant on June 19, 2015. She indicated that she had treated claimant almost monthly during 2012 and 2013, and that she also treated her on February 18, 2014, March 11, 2014, and March 10, 2015. Dr. Knowlton stated:

---

[5] *See* Tr. 24 (ALJ's Decision), 571 (11-14-2013 records), 575 (8-26-2015 records).
[6] Tr. 590-91.

> In Jennifer there have been significant changes in behavior, thought processes, and mood stability during the above period of time. Jennifer was working full time at the University of Montevallo and pursuing her doctoral degree at the University of Alabama. She had begun to feel lethargic, distracted, and depressed. Because her body temperature had been elevated for some time, she sought medical care. She had extensive medical testing and saw several medical specialists who thought she might have some kind of cancer. She continued to become more depressed, unable to sleep, and more and more socially isolated. Jennifer was unable to remain in her job and resigned that position. She then became hyperactive to the extent that she could not rest at all. I had not seen Jennifer for a while and her housemate called me to tell me about her concern for Jennifer's behavior and mood instability. I met with Jennifer and suggested that she seek consultation and psychotropic medication from a psychiatrist. She was diagnosed with Bipolar Disorder with which I was in agreement. Jennifer has stayed in contact with me from time to time but has been unable to resume our counseling sessions because of her unemployment/lack of income. She has not been able to maintain even part-time employment because of her Bipolar Disorder and the continued changes in her medications which have not resulted in consistent mood stability.
>
> I believe that Jennifer needs further long-term psychological counseling to achieve re-entry into society, to learn new skills in order to cope with her Bipolar symptoms and her fear of functioning in failure, and to possibly return to some type of employment in the distant future. That counseling work is expected to be long term and in conjunction with her medication regimen whenever that can be stabilized by her medical doctors.

Tr. 429.

The ALJ afforded only little weight to Dr. Knowlton's assessment because it "appear[ed] to be based on subjective complaints rather than objective medical evidence," and because Knowlton was not a "licensed psychologist[] or psychiatrist[]

8

or acceptable medical source[] and [her opinion] regarding the severity of the claimant's mental impairment and mental functional limitations are beyond the expertise of a . . . licensed counselor."[7]

Social Security regulations define an "acceptable medical source" as including a "licensed psychologist." 20 C.F.R. § 404.1502(a)(2) (emphasis supplied). A licensed psychologist includes a "licensed or certified psychologist at the independent practice level," 20 C.F.R. § 404.1502(a)(2)(i), but it does not include a counselor, even one with a PhD degree. Thus, the ALJ did not err when he found that Dr. Knowlton, a licensed professional *counselor*, was not an acceptable medical source.

The ALJ also did not err in giving little weight to Dr. Knowlton's assessment because it was based upon subjective complaints instead of objective medical evidence. Claimant asserts that, because Dr. Knowlton did not keep detailed records of claimant's visits, there was no way for the ALJ to know whether Dr. Knowlton's assessment was based upon subjective complaints. It is true that Dr. Knowlton did not keep detailed patient records,[8] but even without any supporting records, it was reasonable for the ALJ to conclude from examining the language of the assessment itself that it was based upon subjective complaints. Moreover, as the Commissioner

---

[7] Tr. 29 (alterations and ellipsis supplied).

[8] *See* Tr. 427 ("As for your request for medical records, I have none. I keep only contact information, a HIPPA [*sic*] contract, a counseling contract, and dates of service for each of my private clients.").

9

points out, claimant's "argument that the ALJ could not discount Ms. Knowlton's opinion as unsupported, when Ms. Knowlton kept no notes and reported no objective findings, is . . . an impermissible attempt to shift the burden of proof to the ALJ."[9]

## C. Treating Physician Opinion

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can

---

[9] Doc. no. 12 (Commissioner's Brief), at 11 (ellipsis supplied).

be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Rebecca Jones, claimant's treating psychiatrist, completed a questionnaire from claimant's attorney on December 2, 2015. Dr. Jones indicated that claimant's complaints of severe depression, anxiety, and mood instability due to bipolar disorder were credible. Claimant would need to be treated anywhere between monthly and every three months for her psychological problems, depending on the severity of those problems at the time of treatment. She would not be able to sustain any type of job for a normal work week of eight hours a day, forty hours a week. Claimant's psychiatric conditions rose to the level that they would moderately to severely affect her ability to concentrate and focus on tasks. To support that statement, Dr. Jones noted that claimant had already been forced to discontinue her graduate studies as a result of poor focus and concentration. Claimant's psychiatric conditions would cause her to have difficulty getting along with others at work, because she would exhibit irritability, mood swings, and difficulty working as a team. Claimant's poor

11

concentration also would interfere with her ability to follow through with written and verbal instructions at work.[10]

The ALJ afforded Dr. Jones's opinion little weight because Dr. Jones's treating records and the records of other medical providers did not support the opinion but, instead, "show that since the alleged onset date: most mental status examinations were within normal limits; the claimant often reported her depression and anxiety were stable with medication; and throughout 2012, 2013, 2014, and 2015, the claimant consistently denied having depression, anxiety, and insomnia and exhibited appropriate mood."[11] Those were adequate reasons for rejecting Dr. Jones's opinion, and they are supported by substantial evidence. Although claimant reported symptoms of anxiety and a history of bipolar disorder during her initial consultation with Dr. Jones on August 26, 2015, the clinical examination revealed full orientation, normal appearance, appropriate mood and affect, normal speech, good insight, linear thought processes, no hallucinations or delusions, no dissociative phenomena, no suicidal or homicidal ideation, average intellect, fair attention and concentration, normal judgment, and no memory impairment.[12] When claimant followed up with Dr. Jones on September 15, 2015, she reported that she was feeling better overall. She

---

[10] Tr. 667-68.
[11] Tr. 29.
[12] Tr. 574-75.

felt that her brain was "waking up," and even though she still experienced some depression, her overall thought processes were much clearer, and she had been more active around the house. She still reported some problems concentrating, anxiety, worry, general nervousness, not doing well talking to others, a feeling of disconnection and depersonalization, and trouble remembering things in a conversation. The clinical examination revealed the same findings as did the August 26 examination.[13] Records from other physicians are similar. With a single exception, Dr. Luis Pineda consistently documented appropriate mood, and stated that claimant denied anxiety and depression, in treatment records from April of 2012 to October of 2015.[14] Dr. Jeffery Clifton's treatment records from November of 2012 to September of 2015 also contain normal findings.[15]

The ALJ also stated that Dr. Jones's questionnaire was given little weight because it was "a check-mark type form prepared by the attorney, completed after the hearing, not appearing in any of the treatment records, and with no treatment record for approximately three months . . . prior to that form."[16] The court agrees with

---

[13] Tr. 623-24.

[14] Tr. 292, 295-96, 298-99, 302, 307, 309-10, 314, 321-22, 327, 336, 488, 496, 502, 508, 631, 634. Dr. Pineda stated that claimant reported depression and anxiety on June 5, 2013, but she nonetheless demonstrated appropriate mood. Tr. 331.

[15] Tr. 361, 368, 374, 377, 380, 383, 390, 393, 436-37, 442, 445, 451, 454-55, 605-06, 611, 616-17.

[16] Tr. 30.

claimant that the ALJ overstated the importance of the date and format of Dr. Jones's assessment, but the ALJ's primary basis for rejecting Dr. Jones's opinion — *i.e.,* its inconsistency with Dr. Jones's own records and the records of other treating providers — was sound. Thus, any error the ALJ committed in discussing the date and form of the assessment was harmless, and the ALJ's consideration of Dr. Jones's opinion was supported by substantial evidence.

**D.     Conclusion and Order**

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 24th day of January, 2018.

_____
United States District Judge